THE LAW OFFICE OF MICHAEL A. ALFRED

MICHAEL A. ALFRED, ESQ.    SBN: 113706

4250 EXECUTIVE SQUARE, SUITE 528

LA JOLLA, CALIFORNIA 92037

(858) 453-8400

FILED

2008 AUG -8 PM 4:01

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY _____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ryan Archer; Heather Archer; Dr. Craig ) | Case No.: **'08 CV 1451 J BLM** |
| Chan; Herb Gullingsrud; Carol Gullingsrud; ) | |
| David Hanna; Colleen Hanna; Daniel ) | **COMPLAINT FOR INJUNCTION,** |
| Hogan; Diane Hogan; Susan Kilman; Pat ) | **RESTITUTION, OTHER EQUITABLE** |
| Mihalik; Larry Nelson; Annette Nelson; ) | **RELIEF, AND CIVIL PENALTIES** |
| Larry Scott; Lynn Scott;  William Shanahan;) | |
| Lise Shanahan; Donna Wolosin; James ) | Judge: |
| Wolosin ) | Dept.: |
| Plaintiff(s),) | Action Filed: August 8, 2008 |
| vs. ) | Trial Date: Not Set |
| Wallace Darling, Lakewood Hills ) | |
| Investments, LLC, Universal Real Estate ) | |
| Investments Corp., Land Properties, Inc., ) | |
| Little River Ranch, LLC, Michael Boring, ) | |
| Central Colorado Title Company, Scott ) | |
| McDowell,  Assurity Financial Services, LLC, ) | |
| SunTrust Mortgage, Inc., National City ) | |
| Mortgage Co., Indymac Bank aka Indymac ) | |
| Federal aka Indymac Federal, and QuadStar ) | |
| Mortgage (aka QUADSTAR), and DOES (1- ) | |
| 20) ) | |
| Defendant(s) ) | |

- 1 -

Complaint

## COMPLAINT FOR DAMAGES

Plaintiffs seek rescission of the predatory loans in which they are trapped, equitable relief, and monetary damages.

## JURISDICTION AND VENUE

1. Jurisdiction is predicated upon diversity of citizenship pursuant to 28 U.S.C. section 1332.

2. Jurisdiction is also conferred upon this Court pursuant to 28 U.S.C. section 1331 in that the claims alleged herein arise under the laws of the United States. Competent subject matter jurisdiction and venue exists, in whole and/or in part, pursuant to the following federal statutes:

   a. Section 1964(a) of the Racketeer Influenced and Corrupt Organizations Act of 1970 ['RICO'][Title 18 United States Code § 1964(a)];

   b. Section 1964(c) of the Racketeer Influenced and Corrupt Organizations Act of 1970 ['RICO'][Title 18 United States Code § 1964(a)];

   c. Section 1965(a) of the Racketeer Influenced and Corrupt Organizations Act of 1970 ['RICO'][Title 18 United States Code § 1965(a)];

   d. Section 1965(b) of the Racketeer Influenced and Corrupt Organizations Act of 1970 ['RICO'][Title 18 United States Code § 1965(b)];

   e. Section 1965(d) of the Racketeer Influenced and Corrupt Organizations Act of 1970 ['RICO'][Title 18 United States Code § 1965(d)];

   f. Federal Regulation of Commerce Jurisdiction [Title 28 United States § 1337];

   g. 12 U.S.C. section 2601 of the Real Estate and Settlement Procedures Act and Federal Reserve Regulation X, 24 C.F.R. section 3500; and

   h. 15 U.S.C. section 1640 of the Truth in Lending Act.

3. The Court has jurisdiction over Plaintiffs' action for declaratory relief pursuant to 28 U.S.C. section 2201 and Rule 57 of the Federal Rules of Civil Procedure. Injunctive

relief is authorized by 28 U.S.C. section 2203 and Rule of the Federal Rules of Civil Procedure.

4.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. section 1367 to hear and determine Plaintiffs' state law claims because those claims are related to Plaintiffs' federal claims and arise out of a common nucleus of related facts and form part of the same case or controversy under Article III of the United States Constitution.

5.  Venue is proper in the Southern District of California Pursuant to 28 U.S.C. section 1391(b)(2) in that Plaintiffs reside in the County of San Diego.

## FACTS RELEVANT TO ALL CAUSES OF ACTION

6.  On or about April 2006, Ocean Breeze Real Estate Investment Club was incorporated by Larry Nelson and Annette Nelson.  Ocean Breeze Real Estate Investment Club (hereinafter referred to as "OCEAN BREEZE") is, and at all relevant times herein were engaged in the business of real estate investing.

7.  On or about January of 2007, WALLACE DARLING contacted the owners of OCEAN BREEZE and pitched the Salida, Colorado investment opportunity.  WALLACE DARLING advertised the opportunity as a lucrative project which would be a one-of-a-kind deal that would be sure to return profits to the owners and members of OCEAN BREEZE.

8.  On or about February of 2007, the owners of OCEAN BREEZE made a determination to offer the Salida deal to the group members.

9.  At no time prior to securing the owners commitment to present the Salida deal did WALLACE DARLING disclose the nature or extent of his interests in Salida deal.

10. In or about January of 2007, WALLACE DARLING traveled to California to meet with the owners and members of OCEAN BREEZE and pitch the Salida deal. The presentation and advertisement made by WALLACE DARLING at the OCEAN BREEZE meeting was videotaped.

11.  On or about February of 2007, DANIEL HAMANN, the builder of the new homes in the Salida development, traveled to California at the direction of WALLACE DARLING, to promote the Salida investment opportunity to the members of OCEAN BREEZE.

12.  On or about June 2, 2007, there was an OCEAN BREEZE member meeting during which WALLACE DARLING and DANIEL HAMANN pitched the Salida deal as an ideal opportunity to become a passive investor in a very lucrative project.  WALLACE DARLING and DANIEL HAMANN made a number of inducements in an effort to recruit OCEAN BREEZE investors. One key inducement was the **Repurchase Agreement**. The **Repurchase Agreement** was in the nature of a "put option" executed by the Plaintiffs selling the property back to WALLACE DARLING. WALLACE DARLING would provide each homeowner $50,000 cash compensation for each property repurchased. An additional inducement to contract was the representation that the Plaintiffs would never have to come "out-of-pocket" for any monthly principal and interest payments on the properties. The Plaintiffs were assured that there would be sufficient loan proceeds to cover up to 12 monthly payments on each property. This meeting was recorded and therefore memorialized the promise of the **Repurchase Agreement.**

13.  On or about July 2007, OCEAN BREEZE members had purchased over 10 properties for over a total of $4.5 million dollars. On or about July 7, 2007, OCEAN BREEZE held another member meeting in which the representations made at the June 2, 2007 meeting were reaffirmed and members were encouraged to join the investment project.

14.  On or about August 2007 through December 2007, members of OCEAN BREEZE decided to invest in the Salida project. Each of the Plaintiffs paid WALLACE DARLING an earnest money deposit. At WALLACE DARLING's instruction, each Plaintiff filed out an application for a lot loan and a construction loan.

- 4 -

15. At no time prior to securing Plaintiffs commitment to purchase the Salida properties did WALLACE DARLING or DANIEL HAMANN retract the guarantee of the repurchase agreement.

16. On or about August 2007 through December 2007, WALLACE DARLING informed various OCEAN BREEZE members their applications required corrections and instructed said members to make the various corrections to the applications. WALLACE DARLING informed various OCEAN BREEZE members that their applications had been misplaced and requested that they resubmit duplicate loan applications. WALLACE DARLING took earnest money deposits from OCEAN BREEZE members and failed to deposit the funds into a trust account. The money has never been returned nor has it been accounted for.

17. On or about August 2007 through December 2007, WALLACE DARLING instructed the OCEAN BREEZE to apply for construction loans on these homes as second homes rather than as investment properties.

18. On or about September 2007 through December 2007 WALLACE DARLING informed various OCEAN BREEZE members that they were not approved for the construction loans and agreed to refund said members earnest money deposits by or before December 31, 2007.

19. On or about September 2007 through December 2007 members of OCEAN BREEZE attempted to contact Defendants to obtain refund of their earnest money deposits and never received any return phone calls.

20. On or about January 2008, most of the OCEAN BREEZE members had received the signed repurchase agreement as promised. The OCEAN BREEZE members that had received the signed agreement had not been allowed to execute the repurchase agreement as promised.

21. On or about August 2007 through April 2008, Defendants made promises to refund earnest money deposits, execute repurchase agreements, and expedite the completion of the building.

22. On or about August 2007 through December 2007, Defendants failed to notify Plaintiffs of the true nature of the Salida deal.

**PARTIES**

23. **Plaintiffs** currently reside, and at all relevant times did reside, in the city of San Diego, county of San Diego, State of California.

24. Defendant **Wallace Darling**, is, and at all relevant times herein was engaged in the business of mortgage brokering, construction lending management, sales, real estate development, and providing investment services.

25. Defendant, **Lakewood Hills Investments, LLC**, is, and at all relevant times herein was engaged in the business of, investment services.

26. Defendant, **Universal Real Estate Investments Corp.**, is, and at all relevant times herein was engaged in the business of, real estate investment services.

27. Defendant, **Land Properties, Inc.**, is, and at all relevant times herein was engaged in the practice and business of General Contracting.

28. Defendant, **Little River Ranch, LLC,** is and at all relevant times herein was engaged in the practice and business of General Contracting.

29. Defendant, **Michael Boring**, is, and at all relevant times herein was engaged in the business and practice of General Contracting.

30. Defendant, **Central Colorado Title Company**, is and at all relevant times herein was engaged in the business of title insurance.

31. Defendant, **SunTrust Mortgage Inc.,** is and at all relevant times herein was engaged in the business of providing financial services.

32. Defendant, **National City Mortgage Co.,** is and at all relevant times herein was engaged in the business of providing financial services.

33. Defendant**, Indymac Bank aka Indymac Federal aka Indymac Federal**, is and at all relevant times herein was engaged in the business of providing financial services.

34. Defendant, **Assurity Financial Services, LLC**, is and at all relevant times herein was engaged in the business of providing financial services.

35. Defendant, **QuadStar Mortgage, LLC**, is and at all relevant times herein was engaged in the business of providing financial services.

36. The true names and capacities of **DOES 1 through 20** are currently unknown to Plaintiffs who allege that DOES 1 through 20 are responsible in some manner for the injuries sustained by all Plaintiffs as hereinafter alleged. Plaintiffs request leave to file amendments to this complaint alleging the true names and capacities of DOES 1 through 20 when the same have been ascertained.

## AGENCY

37. At all relevant times herein, each Defendant, whether actually or fictitiously named, was the principal, agent or employee of each other Defendant, and in acting as such principal, or within the course and scope of such employment or agency, took some part in the acts and omissions hereinafter set forth by reason of which each Defendant is liable to Plaintiff for the relief prayed for herein.

38. When reference in this complaint is made to any act or omission of a Defendant corporation, company, association, business entity, or partnership, such allegation shall be deemed to mean that the Defendant and its owners, officers, directors, agents, employees, or representatives did or authorized such act or omission while engaged in the management, direction, or control of the affairs of Defendants and while acting within the scope and course of their duties.

39. At all relevant times alleged herein, all of the Defendants were agents, servants and employees of each other and were acting within the scope of such agency or employment while engaged in the acts, omissions and other conduct alleged in this complaint, or the alleged acts, omissions and other conduct of each defendant were subsequently ratified or adopted by the other Defendants.

40. When reference in this complaint is made to any act or omission of Defendants, such allegation shall be deemed to mean the act or omission of each Defendant acting individually with the other named Defendants.

41. At all relevant times, each Defendant knew or realized that the other Defendants were in engaging in, or planned to engage in, the violations of law alleged in this complaint. Knowing or realizing that other Defendants were engaging in such unlawful conduct, each Defendant nevertheless facilitated the commission of those unlawful acts. Each Defendant intended to, and did, encourage, facilitate, or assist in the commission of the unlawful acts, and thereby aided and abetted the other Defendants in the unlawful conduct.

42. Each Defendant ratified the wrongful conduct of each other, its agents and/or employees, accepted the benefits of their wrongful conduct, and failed to repudiate the misconduct.

## CAUSES OF ACTION CLAIMED BY PLAINTIFF

### COUNT I
### Violation of 18 U.S.C. 1962(c) (Civil RICO) [Against ALL DEFENDANTS]

RICO COMPETENT SUBJECT MATTER JURISDICTION AND RICO VENUE ALLEGATIONS

43. Plaintiffs allege that at all times material herein, the activities, conduct, and/or omissions committed and/or engaged in by the defendants herein give rise to this action being instituted within this Federal District Court inasmuch as the Plaintiffs are citizens and residents of the County of San Diego, City of San Diego, State of California, and the events that give rise to federal Racketeer Influenced and Corrupt

Organizations Act of 1970 ['RICO'][Title U.S.C. Sections 1961, 1965(a), (b), and (d)] action are predicated under the RICO co-conspiracy theory of venue and co-conspiracy theory of personal jurisdiction, by and through employment of federal instrumentalities of federal interstate commerce, including the federal mails, theft and transportation of monies and properties across interstate lines.

44. Plaintiffs, at all times mentioned herein, were, and are, the members of Ocean Breeze Real Estate Investment Club, and all events described herein occurred within the venue and jurisdiction of the United States District Court, **Southern District** of **California.**

**RICO PERSONS**

45. Defendants, WALLACE DARLING, aka Wally Darling, and dba as Lakewood Hills Investments, LLC, MICHAEL BORING, dba Little River Ranch, LLC, SCOTT MCDOWELL, and others at all times mentioned herein did join together, and did act in concert with knowledge, consent and cooperation, each with the others, and did conspire, each with the others, and an "Association in Fact" enterprise and did participate in a pattern of racketeering activity, calculated to violate the provisions of 18 U.S.C. sect. 1962 (a), (b), (c), and (d), primarily through the making of illegal loans, money laundering and the investment of proceeds unlawfully obtained by the Association in Fact, intended for the acquisition of real property located in Chaffee County, Colorado.

46. Defendant, WALLACE DARLING, a Construction Lending Manager, is in the business of making illegal loans, for the benefit of the Association in Fact. Defendant, WALLACE DARLING, regularly collects earnest money deposit payments based upon fraudulent loan transactions, proceeds in the form of checks and money orders made out to Defendants WALLACE DARLING and LAKEWOOD HILLS, for the benefit of the Association in Fact. WALLACE DARLING made affirmative material misrepresentations, and omitted to disclose facts known only to Defendants for the purpose of receiving

- 9 -

Complaint

money orders and personal checks through the United States Postal Service. WALLACE DARLING, did solicit, send and receive fraudulent loan applications and fraudulent loan promissory notes via the federal mails.

47. Defendant, SCOTT MCDOWELL, a mortgage broker, is in the business of real estate brokerage, for the benefit of the Association in Fact. Defendant, WALLACE DARLING, relied on SCOTT MCDOWELL's broker's license, for the benefit of the Association in Fact. SCOTT MCDOWELL, as a member of the Association in Fact, did knowingly assist WALLACE DARLING in obtaining earnest money deposits and loan applications from the Plaintiffs, to promote the carrying on of the unlawful loan transactions, to conceal and disguise the nature, location, source, ownership, and control of proceeds derived from illegal loan transactions, conducted by the Association in Fact.

48. Defendant, MICHAEL BORING, is a developer who operates a business known as LAND PROPERTIES. Defendant MICHAEL BORING, as a member of the Association in Fact, did knowingly assist WALLACE DARLING in promoting and selling real property for the purpose of receiving an unlawful commission through an unlawful pattern of racketeering activity for the purpose of receiving undisclosed commissions on each sale.

49. Defendants, ASSURITY, SUNTRUST, NATIONAL CITY, INDYMAC BANK AKA INDYMAC FEDERAL AKA INDYMAC FEDERAL, SUNTRUST MORTGAGE, and QUADSTAR, hereafter ("LENDERS"), did conspire and assist Defendants WALLACE DARLING, SCOTT MCDOWELL, and MICHAEL BORING.

50. Defendants acted with a specific intent to defraud Plaintiffs by knowingly participating and abetting the scheme. The intent to defraud can be demonstrated by a pattern of conduct and recklessness. The Defendants' conduct was reckless in that they negligently hired and employed WALLACE DARLING. The Defendants' intent to defraud

can also be inferred from the nature of the scheme itself. Each Defendant was benefitted by the illegal and unlawful acts of WALLACE DARLING.

51. As a direct and proximate result of Defendants scheme, Plaintiffs have sustained, and continue to sustain, actual damages, both economic and non-economic, in an amount according to proof.

52. Plaintiffs are unaware of the true names and capacities of Defendants sued herein as DOES 1 through 20, inclusive, and therefore sues said Defendants by fictitious designation. Plaintiffs allege that DOES 1 through 20, at all times mentioned herein, were the agents, employees, representatives, and servants of each of the remaining Defendants, comprising an Association in Fact, and were at all times acting within the purpose and scope of said association, its agency, employment and service. Plaintiffs will ask of Court to amend this Complaint to allege the true names and capacities of DOES 1 through 20, when ascertained.

53. Plaintiffs are informed and believe, and thereon allege that each of said DOE Defendants is responsible in some manner for the events and occurrences herein referred to, and did knowingly and deliberately cause injury and damages to Plaintiffs, as herein alleged.

## RICO FACTUAL ALLEGATIONS

54. Commencing on or about January of 2007, by and through the employment of federal interstate mails, traversing Colorado and Colorado, acting by and through Defendants, unilaterally and actively solicited Plaintiffs, and similarly situated victims, to pay monies to Defendants for their participation in a Real Estate Investment Project ['Salida Project'].

55. Defendants affirmatively represented to Plaintiffs, by and through the employment of interstate federal mails, that Plaintiffs would have an opportunity to invest in the

- 11 -

Salida project if they paid to WALLACE DARLING c/o LAKEWOOD HILLS an earnest money deposit.

56. The Defendants further solicited the Plaintiffs use their good credit to obtain lot loans for the purchase of real property located in Chaffee County, Colorado. Additionally, Plaintiffs were solicited to apply for and obtain loans for the construction of houses on these lots.

57. Defendants affirmatively represented to Plaintiffs, by and through the employment of federal mails, that there would be a contract between each Plaintiff and the builder of the homes, DANIEL HAMANN ('BUILDER') of WHISTLER CUSTOM HOMES, wherein the BUILDER would agree to **repurchase** the house at the maximum of 12 months from the close of escrow.

58. The contract further provided each Plaintiff would receive either $50,000.00 or 10% of the purchase price of the home upon execution of the **Repurchase Agreement.** Moreover, the Defendants guaranteed to Plaintiffs, if for some reason, the builder cannot finish the home within the 12 months, the bank would step in and secure another builder to complete the home.

59. Plaintiffs discussed with Defendants via federal mails, the efficacy and vitality of the Salida project. Plaintiffs allege, based on information and belief, that several of the known promoters had personally contributed funds to the project. In response to Plaintiffs inquiries regarding the project, Defendants sent to Plaintiffs, via federal mails from Colorado to California, and from California to Colorado, printed material information describing the substance of the Project.

60. Defendants provided, through federal mails, the following information describing the Salida project:

a. Promotional materials delivered to Plaintiffs containing representations that the risk elements in this project were minimal;

- 12 -

Complaint

b.   That a contract was presently in place for the subsequent repurchase of the property should the Plaintiffs opt for the **Repurchase Agreement**;

c.   Defendants reassured and reconfirmed to Plaintiffs that no risk of loss of Plaintiff's principal contribution would arise.

d.   In soliciting Plaintiffs, and similarly situated victims, and receiving their earnest money deposits, the Defendants failed to disclose the following:

   i.   Defendants' relationship in the transaction with respect to each other;

   ii.  Defendants' lack of sufficient funds to facilitate the alleged repurchase of the real property, respectively, which Defendants represented would be done upon Plaintiffs request with an additional 10% added to the purchase price or $50,000.00;

   iii. Defendants' absence of intent to acquire the above referenced properties;

   iv.  Defendants' failure to disclose the identities of the lenders to be involved in the Salida scheme;

   v.   Defendants' failure to disclose the fact that the risk associated with the Salida scheme;

   vi.  Defendants' failure to disclose that the Salida scheme did not intend to acquire the properties; rather, the Salida scheme was established as an elaborate subterfuge designed and intended to obtain contributed funds from Plaintiffs, obtain lot loans, construction loans, and permanent loans, for the benefit of all Defendants.

61.  Based upon the aforementioned representations, Plaintiffs contributed monies to the Salida project on or about August 2007 through December 2007. The funds were received by WALLACE DARLING, functioning in the capacity as a Construction Lending Manager on behalf of the Salida project.

### RICO ENTERPRISE ALLEGATIONS [TITLE 18 U.S.C. § 1951(4)]

62.  Plaintiffs allege that Defendants, MICHAEL BORING, SCOTT MCDOWELL, and LENDERS, were employed by and associated with LAKEWOOD HILLS, and engaged in

conduct that constitutes a RICO pattern of racketeering activity. Plaintiffs allege that LAKEWOOD HILLS is a RICO "enterprise," as that term is defined pursuant to Title 18 United States Code §1961(4) of the Racketeer Influenced and Corrupt Organizations Act of 1970.

63.  Plaintiffs allege that the RICO enterprise comprised of LAKEWOOD HILLS, UNIVERSAL REAL ESTATE, AND WALLACE DARLING is managed, directed, and controlled by WALLACE DARLING. Plaintiffs allege that WALLACE DARLING directs and controls the affairs of the enterprise, including the solicitation of victims for funds to be invested to the Salida project, and other alternative investing schemes, and the efforts to conceal from detection by Plaintiffs the misappropriation of monies and/or other intangible real property benefits legally owing to Plaintiffs. Plaintiffs allege that the enterprise is engaged in activities that affect federal interstate commerce.

**RICO PATTERN OF RACKETEERING ACTIVITY ALLEGATIONS [TITLE 18 U.S.C. §1961(5)]**

64.  Plaintiffs allege that Defendants engaged in the above activities and/or conduct that constitutes the following form of "racketeering activity," as that term is defined pursuant to Title 18 United States Code §1961(1) of the Racketeer Influenced and Corrupt Organizations Act of 1970 ["RICO"]:

   a.  Federal Principal and Aider and Abettor Liability: Title 18 U.S.C. §2;

   b.  Federal Mail Fraud: Title 18 U.S.C. §1341;

   c.  Federal Mail Fraud: Conspiracy: Title 18 U.S.C. §1341;

   d.  Federal Racketeering: Title 18 U.S.C. §1952;

   e.  Federally Criminally Derived Property: Title 18 U.S.C. §1957;

   f.  Federal Bank Fraud: Title 18 U.S.C. §1344.

65.  Plaintiffs allege that above activities and/or conduct engaged in by Defendants constituted a "pattern of racketeering activity," as that term is defined pursuant to

Title 18 United States Code §1961(5) of the Racketeering Influenced and Corrupt

Organizations Act of 1970 ["RICO"]. Plaintiffs further allege that the activities and/or

conduct engaged in by Defendants was both related as to the modus operandi

engaged in by said Defendant of depriving Plaintiffs of Plaintiff's interests in business

and/or property, and was continuous inasmuch as the activities and/or conduct

engaged in by Defendants exhibited a realistic, long term threat of continued future

injury to Plaintiff's interest in Plaintiff's property.

66.    Plaintiffs allege that these Defendants have, by and through the pattern of

racketeering activity alleged herein above, victimized the following persons:

a.  Ryan Archer and Heather Archer

b.  Dr. Craig Chan

c.  Herb Gullingsrud and Carol Gullingsrud

d.  David Hanna and Colleen Hanna

e.  Daniel Hogan and Diane Hogan

f.  Susan Kilman

g.  Pat Mihalik

h.  Larry Nelson and Annette Nelson

i.  Larry Scott and Lynn Scott

j.  William Shanahan and Lise Shanahan

k.  James Wolosin and Donna Wolosin

67.    Plaintiffs allege that additional victims of Defendants exist, and the identities

referenced above are cited by example, and not by restriction.

68.    FOR PRIMARY CONTRAVENTION OF RICO Section 1962(c) of the Racketeer Influenced

and Corrupt Organizations Act of 1970 ["RICO"][TITLE 18 United States Code §

1962(e)] Against All DEFENDANTS

69.  For Plaintiffs' First Claim for Relief, Plaintiffs reallege and incorporate Paragraphs (1) through (_).

70.  [RICO Title 18 United States Code §1961(1) (B) Predicate Offense Contraventions]

71.  Federal Principal and Aider and Abettor Liability: Title 18 U.S.C. §2;

   a.  Federal Mail Fraud: Title 18 U.S.C. §1341;

   b.  Federal Mail Fraud: Conspiracy: Title 18 U.S.C. §1341;

   c.  Federal Racketeering: Title 18 U.S.C. §1952;

   d.  Federally Criminally Derived Property: Title 18 U.S.C. §1957.

   e.  Federal Bank Fraud: Title 18 U.S.C. §1344.

72.  Defendants engaged in the aforementioned activities, with the intent to harm Plaintiffs' interest in property. The fraudulent activity engaged by said Defendants affected Plaintiffs property in connection with his business activities that affect federal interstate commerce, resulting in loss of Plaintiffs' monies.

## PATTERN OF RACKETEERING ACTIVITY

73.  The aforementioned activities constitute conduct engaged in by said defendants to deprive Plaintiffs of their interest in business and/or property, by and through commission of federal mail fraud, federal racketeering, federal money laundering, and federal criminally derived property, and federal bank fraud, and are therefore indictable as "racketeering activity," as that term is defined pursuant to Title 18 United States Code §1961(1) (5). The course of conduct engaged in by Defendants constitute both continuity and relatedness of the racketeering activity, as that term is defined pursuant to Title 18 United States Code §1961(5).

74.  The aforementioned pattern of racketeering activity committed by Defendants is both relate and continuous inasmuch as it is designed and/or intended to cause damage and/or injury to the property of the Plaintiffs, and Plaintiffs reasonable believe and

Complaint

apprehend that such conduct shall and will continue prospectively with correlative long term injury.

75. Defendants were employed by, or in the alternative, associated with the RICO enterprise: Plaintiffs allege that the RICO enterprise comprised of WALLACE DARLING, LAKEWOOD HILLS, and UNIVERSAL REAL ESTATE is managed, directed, and controlled by WALLACE DARLING. Plaintiffs allege that said enterprise is engaged in activities that affect federal commerce.

76. In conducting the business and affairs of the RICO enterprise, and in committing the acts, omissions, misrepresentations, and breaches referred to herein between early 2007, and continuing up through and including the initiation of these proceedings, Defendants engaged in a pattern of racketeering activity in contravention of Title 18 United States Code § 1962(c) inasmuch as said defendants were employed by, or associated with, said RICO enterprise that is engaged in activities that affect federal interstate commerce, and conducted such RICO enterprise affairs by and through a pattern of racketeering activity.

77. The activity of the enterprise consisted of WALLACE DARLING directing Defendants, both individuals and entities, to assist him in fraudulently obtaining earnest money deposits, providing Plaintiffs with pre-filled loan applications that contained inaccurate and misleading information, and ultimately executing these fraudulent loan documents.

78. The common link of the group as a whole was WALLACE DARLING who orchestrated the illegal activity and directed each Defendant to act in furtherance of the common shared purpose, defrauding Plaintiffs.

**FEDERAL PRINCIPAL AND AIDER AND ABETTOR LIABILITY: TITLE 18 U.C.C §2**

79. Plaintiffs reallege and incorporate Paragraphs (1) through (_) and the First Cause of Action.

80. Defendants facilitated, encouraged, and/or otherwise promoted the execution, perpetration, and perpetuation of the racketeering activities alleged herein by engaging in the following activities:

   a. Defendants condoning the practice and procedure engaged in by WALLACE DARLING to deprive Plaintiffs of their interests in property;

   b. Defendants use of WALLACE DARLING as a Construction Lending Manager and Mortgage Broker which in fact was a clearinghouse to facilitate and expedite the acquisition of loans and transmission of funds received by plaintiffs; and,

   c. Defendants use of federal mails and federal lenders to lull plaintiffs into a false sense of security by consistently representing that their investments would be returned when, in fact, defendants never intended to execute the **Repurchase Agreement**

   d. Defendants were aware of the commission of the primary RICO contraventions committed by WALLACE DARLING, and that Defendants substantially assisted WALLACE DARLING in the commission of the primary RICO contraventions, thereby deriving a monetary benefit as a result to the detriment of the Plaintiffs.

**VIOLATION OF Title 18 U.S.C. §1341: FEDERAL MAIL FRAUD**

81. Defendants participated in a scheme to obtain money by means of false pretenses, representations or promises.

82. Defendants used the U.S. Postal Service to send and receive the loan applications, promissory notes and other various paperwork for the purpose of executing the scheme.

- 18 -

Complaint

83. Defendant, WALLACE DARLING, had a specific intent to defraud Plaintiffs. He planned and actively participated in the scheme.

84. Defendants, ASSURITY, SUNTRUST, LAKEWOOD HILLS INVESTMENTS, UNIVERSAL REAL ESTATE INVESTMENTS, LAND PROPERTIES, LITTLE RIVER RANCH, AND MICHAEL BORING acted with a specific intent to defraud by knowingly participating and abetting the scheme. The intent to defraud can be demonstrated by a pattern of conduct and recklessness. The intent to defraud can also be inferred from the nature of the scheme itself.

85. As a direct and proximate result of Defendants scheme, Plaintiffs have sustained, and continue to sustain, actual damages, both economic and non-economic, in an amount according to proof.

**VIOLATION OF Title 18 U.S.C.§1957: FEDERALLY CRIMINALLY DERIVED PROPERTY**

86. In 2007, Defendants devised a scheme to defraud and obtain money and property by means of false or fraudulent pretenses, representations, and promises. WALLACE DARLING directed Defendants assist him in fraudulently obtaining earnest money deposits, providing Plaintiffs with pre-filled loan applications that contained inaccurate and misleading information, and ultimately executed these fraudulent loan documents.

87. Plaintiff alleges the purpose of these acts was to disguise and conceal the true facts, that Defendants prepared and executed these unlawful predicate acts, and created an artifice and device to aid WALLACE DARLING in his scheme.

**VIOLATION OF Title 18 U.S.C. §1957: FEDERAL BANK FRAUD**

88. In 2007, Defendant, WALLACE DARLING offered to assist Plaintiffs in obtaining lot loans, construction loans, and permanent loans for the Salida deal. WALLACE DARLING represented to Plaintiffs the loans would be structured in terms favorable to the Plaintiffs. Plaintiffs allege WALLACE DARLING pre-filled the loan application documents,

and included false and misleading information in an attempt to defraud the lenders. WALLACE DARLING sent pre-filled forms indicating the loan applications were for properties to be used as "second homes" for the Plaintiffs. Defendants at no time had any basis for believing Plaintiffs would use the loans to obtain real property to be used as "second homes" but created the artifice and device to aid in the furtherance of the illegal activity of the Enterprise.

89.  WALLACE DARLING, acting in his capacity as an agent for LENDERS, secured financing for Plaintiffs based on the fraudulent loan documents and LENDERS distributed said funds to Plaintiffs. In so doing, WALLACE DARLING knowingly executed, a scheme to defraud multiple financial institutions, attempted to obtain property under the control of a financial institution, by means of false or fraudulent pretenses, representations and promises.

**COUNT II**

**Violation of the Truth in Lending Act, 15 U.S.C. § 1640(e) and 28 U.S.C. §1331 and 1337.**

90.  The disclosure statement issued in conjunction with the consumer credit transactions violated the requirements of the Truth in Lending and Regulation Z in the following and other respects:

a.  By failing to provide the required disclosures prior to consummation of the transaction in violation of 15 U.S.C. §1638(b) and Regulation Z § 226.17(b).

b.  By failing to make the required disclosures clearly and conspicuously in writing in violation of 15 U.S.C. §1632(a) and Regulation Z §226.17(b).

c.  By failing to include in the finance charge certain charges imposed by defendant payable by plaintiff incident to the extension of credit as required by 15 U.S.C. §1605 and Regulation Z §226.4, thus improperly disclosing the finance charge in

violation of 15 U.S.C. § 1638(a)(3) and Regulation Z § 226.18(d). Such amounts include but are not limited to:

  i.    Construction Modification Fee of $250.00

  ii.   Draw Inspection Fee of $700.00

  iii.  Draw Date Downs of $350.00

d.  By failing to include in the Good Faith Estimate, the Compensation paid to Broker.

e.  By reason of the aforesaid violation of the Act and Regulation Z, Defendants are liable to Plaintiffs for actual damages to be established at trial, and attorneys fees and costs in accordance with 15 U.S.C. § 1640.

## COUNT III

**Violation of Real Estate and Settlement Procedures Act, <u>12 U.S.C. § 2601 et seq.</u> and Federal Reserve Regulation X, 24 C.F.R. § 3500 et seq.** [Against ALL DEFENDANTS]

91.  Plaintiffs hereby incorporate by reference the allegations of the above paragraphs as if fully set forth herein.

92.  The loans to Plaintiffs brokered by WALLACE DARLING and funded by SUNTRUST, NATIONAL CITY, INDYMAC BANK AKA INDYMAC FEDERAL AKA INDYMAC FEDERAL, ASSURITY, AND QUADSTAR MORTGAGE are federally related mortgage loans as defined in the Real Estate Settlement Procedures Act ("RESPA") and implemented by Regulation X.

93.  The loans to Plaintiffs brokerd by WALLACE DARLING and funded by SUNTRUST, NATIONAL CITY, INDYMAC BANK AKA INDYMAC FEDERAL AKA INDYMAC FEDERAL, ASSURITY, AND QUADSTAR MORTGAGE violated the Real Estate and Settlement Procedures Act by including an additional $50,000.00 which was to be paid back to Plaintiffs upon exectution of the **Repurchase Agreement.**

94.  Pursuant to <u>12 U.S.C. § 2607(d)</u>, Plaintiffs are entitled to recover from DEFENDANTS an amount equal to three times the amount of any and all charges for "settlement

services" paid directly or indirectly by Plaintiffs, as well as actual damages, court costs, attorneys' fees and any other amounts or damages permissible under RESPA.

95. By the actions described herein and as a proximate cause of DEFENDANTS conduct, Plaintiffs were damaged, in an amount to be proven at trial but not yet ascertained. WHEREFORE, Plaintiffs pray for damages as set forth below.

### COUNT II

**Violation of Business and Professions Code 17200** [Against ALL DEFENDANTS]

96. Plaintiffs hereby incorporate by reference the allegations of the above paragraphs as if fully set forth herein.

97. Beginning on an exact date unknown to Plaintiff, but within two years prior to the filing of this Complaint, and continuing to the present, Defendants engaged in unfair competition in violation of Business and Professions Code 17200, including, but not limited to, one or more unlawful, unfair or fraudulent business acts or practices:

98. By significantly deviating from traditional underwriting standards when originating non-traditional loan products;

99. By ignoring internal controls that suggested certain loan applications be denied and funding those loan applications merely to increase market share;

100. By creating an incentive based compensation system that induced brokers and sales associates to engage in predatory practices; and

101. By utilizing deceptive lending practices including, but not limited to, (i) by failing to provide clear and balanced information concerning the risks and features of its non-traditional loans; and (ii) by inducing plaintiffs to enter into loans with repurchase options and (iii) by engaging in fraud or deception to conceal the true nature of the mortgage loan obligation.

### COUNT IV

For **Fraud in the Inducement** to Contract [Against ALL DEFENDANTS]

- 22 -

Complaint

102. Plaintiffs hereby incorporate by reference the allegations of the above paragraphs as if fully set forth herein.

103. At all relevant times herein, Defendants had an affirmative duty to take all reasonably possible steps to ensure their agents were making representations consistent with their company policies. Defendants also had an affirmative duty to make representations consistent with the results of their loan application processing.

104. Plaintiff originally made payments toward the Salida project. On or about August 2007 through December 2007, Plaintiffs mailed earnest money deposits and completed loan applications pursuant as instructed by Defendants. Beginning on an exact date unknown to Plaintiffs, but within two years prior to the filing of this Complaint, and continuing to the present, Defendants made a false representation to the Plaintiffs, namely that there would be a **Repurchase Agreement** guaranteed to each OCEAN BREEZE member who entered into the Salida project.

105. The **Repurchase Agreement** was a material fact in that it reduced the risk of making the investment to a bare minimum.

106. In directing Plaintiffs to purchase property in Salida, Defendants informed Plaintiffs that the property would be a good purchase for real estate investors because of the minimal risk guaranteed by the **Repurchase Agreement**. By the manipulation that included directly stating the Salida deal was a good purchase for that specific purpose, Defendants made a false representation and concealed from Plaintiff the lack of intent to offer the **Repurchase Agreement.**

107. Defendants' representation to Plaintiffs that the Salida deal was a good purchase for investors because of the **Repurchase Agreement** was an important inducement for Plaintiffs to agree to purchase the property.

- 23 -

108. It was the Defendants' objective to sell the Salida project by whatever means necessary, and Defendants knew that Plaintiffs would not buy property in the Salida project if true facts were known. Thus, Defendants made the misrepresentations and omissions of facts with the intent to deceive and defraud Plaintiff for the purpose of inducing Plaintiff to rely upon the representations and to act in reliance thereon by executing the Contract.

109. Plaintiffs did not know that the representations of Defendants were false, were unaware of the concealed and suppressed intent and facts because Defendants failed to provide Plaintiffs with sufficient information to make an independent determination of the facts, and actively prevented Plaintiffs from discovering the true and concealed facts.

110. Plaintiffs acted in reliance on the truth of the representations by executing the Contracts, completing the loan applications, signing the promissory notes, paying the earnest money deposits, and by thereafter making payments, all to their detriment. Plaintiff's reliance was justified because Defendants are licensed mortgage loan brokers, owed Plaintiff a fiduciary duty to act in good faith and fair dealing and Plaintiffs had no reason to disbelieve or distrust Defendants.

111. Because of Defendant's fraud by intentional misrepresentation and concealment, Plaintiffs are entitled to rescind the Contracts and obtain restitution.

112. As a direct and proximate result of Defendants' fraud, Plaintiff has sustained, and continues to sustain, actual damages, both economic and non-economic in an amount according to proof.

113. Defendants are liable pursuant to the contract language.

114. The fraud of Defendants as herein alleged was on the parts of the officers, directors, and managing agents of Defendants. Said officers, directors, and managing agents had advance knowledge of the unfitness of the employees who committed the fraud

- 24 -

Complaint

against Plaintiffs, employed those employees with a conscious disregard of the rights of others, authorized the conduct of the employees, and ratified their conduct after the fact by accepting the profits and benefits of the Contract, refusing to rescind the Contract, and failing to discharge or discipline the responsible employees.

115. Defendants' conduct constitutes fraud within the meaning of Civil Code 3294(c) (3) such that Plaintiff is entitled to punitive damages according to proof.

WHEREFORE, Plaintiff prays for judgment, as set forth below.

## COUNT V

### Intentional Misrepresentation (Fraud) California Civil Code §§ 1709-1710
[Against ALL DEFENDANTS]

116. Plaintiffs hereby incorporate by reference the allegations of the above paragraphs as if fully set forth herein.

117. SUNTRUST, NATIONAL CITY, INDYMAC BANK AKA INDYMAC FEDERAL, ASSURITY, AND QUADSTAR, by themselves and through their agent, Wallace Darling, made several representations to Plaintiffs regarding important facts. These include:

a. That what was in reality an entirely separate, second loan was nothing more than a "simple transfer" transaction;

b. That Plaintiffs would never be responsible for any permanent loans despite the documents of LOAN that stated otherwise; and

c. that Plaintiffs would never be responsible for reselling the property due to the repurchase agreement guaranteed by Wallace Darling; and

d. that Plaintiffs would never be responsible for any underwriting fees, tax certification fees, home owner association fees, wire transfer fees, hazard insurance fees, or County property taxes.

Complaint

118. All of these enumerated statements by SUNTRUST, NATIONAL CITY, INDYMAC BANK AKA INDYMAC FEDERAL, ASSURITY, AND QUADSTAR were false.

119.  SUNTRUST, NATIONAL CITY, INDYMAC BANK AKA INDYMAC FEDERAL, ASSURITY, AND QUADSTAR knew that these representations were false when the statements were made, or these representations were made with reckless disregard for the truth.

120. SUNTRUST, NATIONAL CITY, INDYMAC BANK AKA INDYMAC FEDERAL, ASSURITY, AND QUADSTAR intended that Plaintiffs rely on these representations.

121. Plaintiffs reasonably relied on SUNTRUST, NATIONAL CITY, INDYMAC BANK AKA INDYMAC FEDERAL, ASSURITY, AND QUADSTAR'S representations.

122. As a result of such reliance, Plaintiffs were harmed.

123. Plaintiffs' reliance on the representations made by SUNTRUST, NATIONAL CITY, INDYMAC BANK AKA INDYMAC FEDERAL, ASSURITY, AND QUADSTAR was a substantial factor in causing Plaintiff's harm.

124. SUNTRUST, NATIONAL CITY, INDYMAC BANK AKA INDYMAC FEDERAL, ASSURITY, AND QUADSTAR are guilty of malice, fraud or oppression as defined in Civil Code § 3294, and where appropriate Plaintiffs should therefore recover, in addition to actual damages, damages to make an example of and to punish SUNTRUST, NATIONAL CITY, INDYMAC BANK AKA INDYMAC FEDERAL, ASSURITY, AND QUADSTAR.

WHEREFORE, Plaintiffs pray for relief as set forth below.

### COUNT VI

**Fraudulent Concealment California Civil Code §§ 1709-1710** [Against ALL DEFENDANTS]

125. Plaintiffs hereby incorporate by reference the allegations of the above paragraphs as if fully set forth herein.

126. Wallace Darling, as a **mortgage broker**, owed Plaintiffs a fiduciary duty to act in good faith and abstain from dishonesty and **fraud**. Moreover, WALLACE DARLING's standard of care increased as a result of receiving the earnest money deposits.

127. Wallace Darling failed to disclose important facts to Plaintiffs including:

    a.  The nature and extent of the loan contracts;

    b.  Failure to provide good-faith estimate of mortgage loan costs;

    c.  Failure to timely and properly maintain, preserve, or keep available all books, accounts or other required documents and refusal to permit investigation of books, accounts or other required documents;

    d.  Failed to disclose his inconsistent and conflicting financial interests in the Salida project;

    e.  Failed to disclose his conflict of interests. Defendant's financial interests in the deal.

    f.  Failed to disclose any and all commissions paid to Wallace Darling relating to the Salida deal.

128. For reasons set forth above, Plaintiffs did not know of these concealed facts.

129. As alleged above, Wallace Darling intended to deceive Plaintiffs by concealing these important facts.

130. For reasons set forth above, Plaintiffs reasonably relied on Wallace Darling's deception.

131. As alleged above, as a result of Wallace Darling's deception, Plaintiffs were harmed.

132. As set forth above, Wallace Darling's concealment and deception was a substantial factor in causing Plaintiffs' harm.

WHEREFORE, Plaintiffs pray for relief as set forth below.

**COUNT VII**

**Negligent Misrepresentation California Civil Code §§ 1709-1710**[Against ALL DEFENDANTS]

133. Plaintiffs hereby incorporate by reference the allegations of the above paragraphs as if fully set forth herein.

134. Defendants had an affirmative duty to advise Plaintiffs to complete their applications truthfully and honestly.

135. Defendants knew or should have known that the loans Plaintiffs were applying for were for investment properties and not for use as their second homes.

136. Defendants breached this duty by instructing Plaintiffs to misrepresent information on the loan applications, specifically to indicate the homes were second homes and not investment properties. Defendants are liable for negligence in the exercise of their expertise. Defendants are bound to use skill and diligence in the conduct of the business in which they were employed by the Plaintiffs.

137. Defendants knew or should have known that Plaintiff would rely on its representations and instructions in completing the loan applications.

138. Plaintiff trusted and did rely on Defendants representations because Defendants were in a position of superior knowledge; because mortgage brokers and lenders are prohibited by statute from making false or misleading statements in the course of a transaction; and, because Plaintiff had no reason to distrust Defendants.

139. As a result of the misrepresentations and omissions of facts, Plaintiff suffered harm in that instead of having loans they got loans subject to call as a result of the misrepresentation that they were second homes. Moreover, the loans as executed subject the Plaintiffs to liability under Federal Lending Law.

140. Plaintiff's reliance on Defendants' representations about the nature of the loan was a substantial factor in causing the harm suffered by Plaintiff.

WHEREFORE, Plaintiffs pray for relief as set forth below.

## COUNT VIII

### Breach of Fiduciary Duty <u>California Civil Code §§ 1709-1710</u> [Against ALL DEFENDANTS]

141. Plaintiffs hereby incorporate by reference the allegations of the above paragraphs as if fully set forth herein.

142. California law imposes on mortgage brokers, as fiduciaries, the same obligation of undivided service and loyalty that it imposes on a trustee in favor of a beneficiary.

143. All Defendants owed Plaintiffs fiduciary duties of utmost loyalty, good faith and diligence and breached those duties by, *inter alia:*

144. Defendants engaged in the conduct alleged herein for the purpose of advancing their own financial interest and in callous disregard of the foreseeable financial consequences to Plaintiffs.

145. Defendants failed to act diligently by failing to properly inform Plaintiffs of LOAN, failing to disclose all material terms of the transaction, and failing to comply with applicable consumer protections intended to benefit plaintiffs.

146. As a result of Defendant's breach of their fiduciary duties to Plaintiffs, Plaintiffs have sustained damages to be proven at trial but not yet ascertained.

147. Defendants conduct as alleged herein was a substantial factor in causing the damages sustained by Plaintiffs.

WHEREFORE, Plaintiffs pray for relief as set forth below.

## COUNT IX

### For Conversion [Against ALL Defendants]

148. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth in this cause of action.

149. At the time the Plaintiffs made payments to LAKEWOOD HILLS, WALLACE DARLING, and other Defendants, Plaintiffs were, and still are, the rightful owner of the money used to make those payments.

150. At the time Defendants took possession of the money used to make those payments, the money had a value in excess of $1,100,000.00,

151. By Defendants taking possession of Plaintiff's money under the false pretense of stating it would be held in trust by WALLACE DARLING and other related Defendants and then failing to redeliver possession of the money to Plaintiff, Defendants converted the money to its own use(s).

152. The acts by Defendants as herein alleged were willful, deliberate, malicious, and intended to oppress and defraud Plaintiff so that Defendants are subject to exemplary and/or punitive damages.

WHEREFORE, Plaintiff prays for judgment, as set forth below.

### COUNT XI

**Rescission/Cancellation California Civil Code § 1689 and Court's Inherent Equitable Authority [Against ALL DEFENDANTS]**

153. Plaintiffs hereby incorporate by reference the allegations of the above paragraphs as if fully set forth herein.

154. Plaintiffs' obligations under LOAN were obtained by fraud, duress and undue influence.

155. The terms of LOAN were misrepresented to Plaintiffs.

156. Defendants obtained illegal, unnecessary and duplicative fees for processing and financing LOAN.

157. Plaintiffs are entitled to rescission and/or cancellation of LOAN 1 and LOAN 2, inter alia, pursuant to California Civil Code § 1689.

WHEREFORE, Plaintiffs pray for relief as set forth below.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for the following relief:

1. That the Court assume supplemental jurisdiction over all state law claims, pursuant to 28 U.S.C. § 1367;

2. That the Court declares that Defendants violated applicable provisions of federal and state law;

3. That the Court award damages against DEFENDANT pursuant to 15 U.S.C. § 1640;

4. That the Court award damages against DEFENDANTS pursuant to 12 U.S.C. § 2607(d);

5. That the Court award punitive, compensatory, and actual damages against Defendants according to proof at trial;

6. Such other relief that the Court award Plaintiffs all other relief as the Court deems just.

Respectfully submitted:

Michael A. Alfred,

Attorney for plaintiffs

- 31 -

Complaint

THE LAW OFFICE OF MICHAEL A. ALFRED

MICHAEL A. ALFRED, ESQ.    SBN: 113706

4250 EXECUTIVE SQUARE, SUITE 528

LA JOLLA, CALIFORNIA 92037

(858) 453-8400

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ryan Archer; Heather Archer; Dr. Craig ) | Case No.: |
| Chan; Herb Gullingsrud; Carol Gullingsrud; ) | |
| David Hanna; Colleen Hanna; Daniel ) | **RICO CASE STATEMENT** |
| Hogan; Diane Hogan; Susan Kilman; Pat ) | |
| Mihalik; Larry Nelson; Annette Nelson; ) | Judge: |
| Larry Scott; Lynn Scott;  William Shanahan;) | Dept.: |
| Lise Shanahan; Donna Wolosin; James ) | Action Filed: August 8, 2008 |
| Wolosin ) | Trial Date: Not Set |
| Plaintiff(s),) | |
| vs. ) | |
| Wallace Darling, Lakewood Hills ) | |
| Investments, LLC, Universal Real Estate ) | |
| Investments Corp., Land Properties, Inc., ) | |
| Little River Ranch, LLC, Michael Boring, ) | |
| Central Colorado Title Company, Scott ) | |
| McDowell,  Assurity Financial Services, LLC, ) | |
| SunTrust Mortgage, Inc., National City ) | |
| Mortgage Co., Indymac Bank aka Indymac ) | |
| Federal aka Indymac Federal, and QuadStar ) | |
| Mortgage (aka QUADSTAR), and DOES (1- ) | |
| 20) ) | |
| Defendant(s) ) | |

- 1 -

## RICO CASE STATEMENT

1. Defendants utilized a pattern of unlawful activities to infiltrate an interstate enterprise and constitutes violation of 18 U.S.C. § 1962(c).

2. Defendant, WALLACE DARLING, acting individually and as an agent of Defendants, conspired to employ a scheme to obtain money from Plaintiffs by means of false pretenses, representations and promises. WALLACE DARLING is a 'person,' as that term is defined pursuant to Section 1961(3) of the Racketeer Influenced and Corrupt Organizations Act of 1970 ['RICO'].

LAKEWOOD HILLS INVESTMENTS conspired to employ a scheme to obtain money from Plaintiffs by means of false pretenses, representations and promises. LAKEWOOD HILLS INVESTMENTS is a 'person,' as that term is defined pursuant to Section 1961(3) of the Racketeer Influenced and Corrupt Organizations Act of 1970 ['RICO'].

UNIVERSAL REAL ESTATE INVESTMENTS conspired to employ a scheme to obtain money from Plaintiffs by means of false pretenses, representations and promises. UNIVERSAL REAL ESTATE INVESTMENTS is a 'person,' as that term is defined pursuant to Section 1961(3) of the Racketeer Influenced and Corrupt Organizations Act of 1970 ['RICO'].

LAND PROPERTIES participated in a scheme to defraud Plaintiffs by means of false pretenses, representations and promises. LAND PROPERTIES paid unearned commission fees to WALLACE DARLING. LAND PROPERTIES is a 'person,' as that term is defined pursuant to Section 1961(3) of the Racketeer Influenced and Corrupt Organizations Act of 1970 ['RICO'].

LITTLE RIVER RANCH participated in a scheme to defraud Plaintiffs by means of false pretenses, representations and promises. LAND PROPERTIES paid unearned commission fees to WALLACE DARLING. LITTLE RIVER RANCH is a 'person,' as

- 2 -

that term is defined pursuant to Section 1961(3) of the Racketeer Influenced and Corrupt Organizations Act of 1970 ['RICO'].

MICHAEL BORING, participated in a scheme to defraud Plaintiffs by means of false pretenses, representations and promises. LAND PROPERTIES paid unearned commission fees to WALLACE DARLING. MICHAEL BORING is a 'person,' as that term is defined pursuant to Section 1961(3) of the Racketeer Influenced and Corrupt Organizations Act of 1970 ['RICO'].

ASSURITY directly ordered, authorized, and participated in the scheme to defraud Plaintiffs by means of false pretenses, representations and promises. ASSURITYS' fraud by intentional misrepresentation and concealment advanced the racketeering activity. ASURRITY employed WALLACE DARLING with a conscious disregard of the rights of others, authorized the conduct of WALLACE DARLING, and ratified his conduct after the fact by accepting the profits and benefits of the Contracts, refusing to rescind the Contracts, and failing to discharge or discipline WALLACE DARLING.

SUNTRUST MORTGAGE, INC. directly ordered, authorized, and participated in the scheme to defraud Plaintiffs by means of false pretenses, representations and promises. SUNTRUST MORTGAGE, INC.'s fraud by intentional misrepresentation and concealment advanced the racketeering activity. SUNTRUST MORTGAGE, INC. employed WALLACE DARLING with a conscious disregard of the rights of others, authorized the conduct of WALLACE DARLING, and ratified his conduct after the fact by accepting the profits and benefits of the Contracts, refusing to rescind the Contracts, and failing to discharge or discipline WALLACE DARLING. SUNTRUST MORTGAGE INC. is a 'person,' as that term is defined pursuant to Section 1961(3) of the Racketeer Influenced and Corrupt Organizations Act of 1970 ['RICO'].

QUADSTAR MORTGAGE directly ordered, authorized, and participated in the scheme to defraud Plaintiffs by means of false pretenses, representations and promises.

- 3 -

RICO CASE STATEMENT

QUEDSTAR MORTGAGE's fraud by intentional misrepresentation and concealment advanced the racketeering activity. QUEDSTAR MORTGAGE employed WALLACE DARLING with a conscious disregard of the rights of others, authorized the conduct of WALLACE DARLING, and ratified his conduct after the fact by accepting the profits and benefits of the Contracts, refusing to rescind the Contracts, and failing to discharge or discipline WALLACE DARLING. QUADSTAR is a 'person,' as that term is defined pursuant to Section 1961(3) of the Racketeer Influenced and Corrupt Organizations Act of 1970 ['RICO'].

SCOTT MCDOWELL, used his licensing to provide cover for WALLACE DARLINGS' activities and wrong doings.

3. DANIEL HAMANN and WILLIAM R.JONES, the builders of the homes in the Salida project, entered into construction contracts with Plaintiffs and agreed to repurchase the properties upon Plaintiffs election. DANIEL HAMANN and WILLIAM R. JONES failed to offer the Repurchase Agreement as promised.

4. Plaintiffs, Ryan Archer; Heather Archer; Dr. Craig Chan; Herb Gullingsrud; Carol Gullingsrud; David Hanna; Colleen Hanna; Daniel Hogan; Diane Hogan; Susan Kilman; Pat Mihalik; Larry Nelson; Annette Nelson; Larry Scott; Lynn Scott; William Shanahan; Lise Shanahan; Donna Wolosin; and James Wolosin acted in reliance on the truth of the representations of WALLACE DARLING by providing WALLACE DARLING cash, which was neither placed into a trust account nor returned to Plaintiffs, the rightful owners, all to their detriment. Moreover, above named Plaintiffs suffered losses, including but not limited to, the actual loan payments, miscellaneous expenses, related taxes, home owners association fees, insurance fees and other damages to be proved at trial.

RICO CASE STATEMENT

5. Defendants utilized a pattern of racketeering activity to infiltrate an interstate enterprise by conducting the affairs of the enterprise through the pattern of racketeering activity which injured Plaintiffs.

    a. Alleged predicate acts and the specific statutes that were allegedly violated;

        i. Federal Principal and Aider and Abettor Liability: Title 18 U.S.C. §2;

        ii. Federal Mail Fraud: Title 18 U.S.C. §1341;

        iii. Federal Mail Fraud: Conspiracy: Title 18 U.S.C. §1341;

        iv. Federal Racketeering: Title 18 U.S.C. §1952;

        v. Federally Criminally Derived Property: Title 18 U.S.C. §1957.

        vi. Federal Bank Fraud: Title 18 U.S.C. §1344

    b. Commencing on or about January of 2007, by and through the employment of federal interstate mails, traversing California and Colorado, acting by and through Defendants, unilaterally and actively solicited Plaintiffs, and similarly situated victims, to pay monies to Defendants for their participation in a Real Estate Investment Project ['Salida Project']. Defendants affirmatively represented to Plaintiffs, by and through the employment of interstate federal mails, that Plaintiffs would have an opportunity to invest in the Salida project if they paid to WALLACE DARLING c/o LAKEWOOD HILLS an earnest money deposit. The Defendants further solicited the Plaintiffs use their good credit to obtain lot loans for the purchase of real property located in Chaffee County, Colorado. Additionally, Plaintiffs were solicited to apply for and obtain loans for the construction of houses on these lots. Defendants affirmatively represented to Plaintiffs, by and through the employment of federal mails, that there would be a contract between each Plaintiff and the builder of the homes, DANIEL HAMANN ('BUILDER') of WHISTLER CUSTOM HOMES, wherein the BUILDER would agree to **repurchase** the house at the maximum of 12 months from the close of escrow. The contract further provided each Plaintiff would receive either $50,000.00 or 10% of the purchase price of the home upon execution of the **Repurchase Agreement.** Moreover, the Defendants guaranteed

- 5 -

to Plaintiffs, if for some reason, the builder cannot finish the home within the 12 months, the bank would step in and secure another builer to complete the home.

c.  On or about, early 2007, Plaintiffs discussed with Defendants via federal mails, the efficacy and vitality of the Salida project. Plaintiffs allege, based on information and belief, that several of the known promoters had personally contributed funds to the project. In response to Plaintiffs inquiries regarding the project, Defendants sent to Plaintiffs, via federal mails from Colorado to California, and from California to Colorado, printed material information describing the substance of the Project.

Defendants provided, through federal mails, the following information describing the Salida project:

- Promotional materials delivered to Plaintiffs containing representations that the risk elements in this project were minimal;
- That a contract was presently in place for the subsequent repurchase of the property should the Plaintiffs opt for the **Repurchase Agreement**;
- Defendants reassured and reconfirmed to Plaintiffs that no risk of loss of Plaintiff's principal contribution would arise.
- In soliciting Plaintiffs, and similarly situated victims, and receiving their earnest money deposits, the Defendants failed to disclose the following:
- Defendants' relationship in the transaction with respect to each other;
- Defendants' lack of sufficient funds to facilitate the alleged repurchase of the real property, respectively, which Defendants represented would be done upon Plaintiffs request with an additional 10% added to the purchase price or $50,000.00;
- Defendants' absence of intent not to acquire the above referenced properties;
- Defendants' failure to disclose the identities of the lenders to be involved in the Salida scheme;

- 6 -

RICO CASE STATEMENT

- Defendants' failure to disclose the fact that the risk associated with the Salida scheme;

- Defendants' failure to disclose that the Salida scheme did not intend to acquire the properties; rather, the Salida scheme was established as an elaborate subterfuge designed and intended to obtain contributed funds from Plaintiffs, obtain lot loans, construction loans, and permanent loans, for the benefit of all Defendants.

d. At the time of the filing of this complaint, no criminal litigation has resulted in a judgment with regard to any predicate act.

e. At the time of the filing of this complaint, no civil litigation has resulted in a judgment with regard to any predicate act;

f. Plaintiffs allege that above activities and/or conduct engaged in by Defendants constituted a "pattern of racketeering activity," as that term is defined pursuant to Title 18 United States Code §1961(5) of the Racketeering Influenced and Corrupt Organizations Act of 1970 ["RICO"]. Plaintiffs further allege that the activities and/or conduct engaged in by Defendants was both related as to the modus operandi engaged in by said Defendant of depriving Plaintiffs of Plaintiff's interests in business and/or property, and was continuous inasmuch as the activities and/or conduct engaged in by Defendants exhibited a realistic, long term threat of continued future injury to Plaintiff's interest in Plaintiff's property.

g. The alleged predicate acts relate to each other as part of a common plan. Defendants facilitated, encouraged, and/or otherwise promoted the execution, perpetration, and perpetuation of the racketeering activities alleged herein by engaging in the following activities:

   i. Defendants condoning the practice and procedure engaged in by WALLACE DARLING to deprive Plaintiffs of their interests in property;

   ii. Defendants use of WALLACE DARLING as a Construction Lending Manager and Mortgage Broker which in fact was a clearinghouse to facilitate and expedite the acquisition of loans and transmission of funds received by plaintiffs; and,

- 7 -

RICO CASE STATEMENT

    iii.  Defendants use of federal mails and federal lenders to lull plaintiffs into a false sense of security by consistently representing that their investments would be returned when, in fact, defendants never intended to execute the **Repurchase Agreement;**

    iv.  Defendants were aware of the commission of the primary RICO contraventions committed by WALLACE DARLING, and that Defendants substantially assisted WALLACE DARLING in the commission of the primary RICO contraventions, thereby deriving a monetary benefit as a result to the detriment of the Plaintiffs.

6.    Plaintiffs allege that Defendants, MICHAEL BORING, SCOTT MCDOWELL, and LENDERS, were employed by and associated with LAKEWOOD HILLS, and engaged in conduct that constitutes a RICO pattern of racketeering activity. Plaintiffs allege that LAKEWOOD HILLS is a RICO "enterprise," as that term is defined pursuant to Title 18 United States Code §1961(4) of the Racketeer Influenced and Corrupt Organizations Act of 1970.

    Plaintiffs allege that the RICO enterprise comprised of LAKEWOOD HILLS, UNIVERSAL REAL ESTATE, AND WALLACE DARLING is managed, directed, and controlled by WALLACE DARLING. Plaintiffs allege that WALLACE DARLING directs and controls the affairs of the enterprise, including the solicitation of victims for funds to be invested to the Salida project, and other alternative investing schemes, and the efforts to conceal from detection by Plaintiffs the misappropriation of monies and/or other intangible real property benefits legally owing to Plaintiffs. Plaintiffs allege that the enterprise is engaged in activities that affect federal interstate commerce.

7.    Plaintiff alleges that the pattern of racketeering activity and the enterprise have not merged into one entity.

8.    The relationship between the activities of the enterprise and the pattern of racketeering activity differ in that WALLACE DARLING uses the enterprise to attract legally operating entities to engage in illegal activity. The racketeering activity, namely

RICO CASE STATEMENT

providing Plaintiffs with prefilled and fraudulent loan documents, differs from the usual daily activities of the LENDERS in that the LENDERS typically reject fraudulent and/or prefilled loan documents.

9. The enterprise received financial benefit from the alleged pattern of racketeering.

10. Unsuspecting individuals in multiple states across the country are being lulled into fraudulent real property investment transactions.

11. Not Applicable

12. Not Applicable

13. Plaintiffs allege violation of 18 U.S.C. 1962(c):

    a.  Wallace Darling

    b.  Lakewood Hills, LLC

    c.  Universal Real Estate Investment Corporation

    d.  The same entity is both the liable "person" and the "enterprise" under 18 U.S.C. 1962(c)

14. Plaintiffs Alleged Injury

    a.  Loss of monies

    b.  Damage to business reputation

    c.  Damage to credit reports

    d.  Emotional and mental distress

    e.  As a result of the misrepresentations and omissions of facts, Plaintiff suffered harm in that instead of having loans they got loans subject to call as a result of the misrepresentation that they were second homes. Moreover, the loans as executed subject the Plaintiffs to liability under Federal Lending Law.

    f.  Other injury to be proved

15. Plaintiffs allege that above activities and/or conduct engaged in by Defendants constituted a "pattern of racketeering activity," as that term is defined pursuant to Title 18 United States Code §1961(5) of the Racketeering Influenced and Corrupt Organizations Act of 1970 ["RICO"]. Plaintiffs further allege that the activities and/or conduct engaged in by Defendants was both related as to the modus operandi engaged in by said Defendant of depriving Plaintiffs of Plaintiff's interests in business and/or property, and

was continuous inasmuch as the activities and/or conduct engaged in by Defendants exhibited a realistic, long term threat of continued future injury to Plaintiff's interest in Plaintiff's property.

16. Federal Causes of Action

    a.  Section 1964(a) of the Racketeer Influenced and Corrupt Organizations Act of 1970 ['RICO'][Title 18 United States Code § 1964(a)];

    b.  Section 1964(c) of the Racketeer Influenced and Corrupt Organizations Act of 1970 ['RICO'][Title 18 United States Code § 1964(a)];

    c.  Section 1965(a) of the Racketeer Influenced and Corrupt Organizations Act of 1970 ['RICO'][Title 18 United States Code § 1965(a)];

    d.  Section 1965(b) of the Racketeer Influenced and Corrupt Organizations Act of 1970 ['RICO'][Title 18 United States Code § 1965(b)];

    e.  Section 1965(d) of the Racketeer Influenced and Corrupt Organizations Act of 1970 ['RICO'][Title 18 United States Code § 1965(d)];

    f.  Federal Regulation of Commerce Jurisdiction [Title 28 United States § 1337];

    g.  12 U.S.C. section 2601 of the Real Estate and Settlement Procedures Act and Federal Reserve Regulation X, 24 C.F.R. section 3500; and

    h.  15 U.S.C. section 1640 of the Truth in Lending Act.

17. Pendant State Claims

    a.  Violation of Business and Professions Code 17200

    b.  Fraud in the Inducement to Contract

    c.  Intentional Misrepresentation (Fraud)

    d.  Fraudulent Concealment

    e.  Negligent Misrepresentation

    f.  Breach of Fiduciary Duty

    g.  For Conversion

    h.  Rescission/Cancellation

RICO CASE STATEMENT

18. At the time of the filing of this complaint, additional victims are known to exist. Plaintiffs

hereby request that the Court allow Plaintiffs to amend the complaint once more

information is known about the whereabouts and involvement of these victims.

DATED: August 08, 2008

_Michael A. Alfred_

Michael A. Alfred, Esq.

- 11 -

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Ryan Archer et al. (complete plaintiff list attached)

**(b)** County of Residence of First Listed Plaintiff **San Diego, CA**
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
MICHAEL A. ALFRED, 4250 EXECUTIVE SQUARE, SUITE 528, LA JOLLA, CALIFORNIA 92037 858) 453-8400

## DEFENDANTS

FILED

Wallace Darling et al. (complete defendant list attached)

2008 AUG -8 PM 4:08

County of Residence of First Listed Defendant    Arapahoe County, CO

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

BY_____ DEPUTY

Attorneys (If Known)

'08 CV 1451 J BLM

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff

☐ 2 U.S. Government Defendant

☐ 3 Federal Question
(U.S. Government Not a Party)

☒ 4 Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☒ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | Alien Detainee | | ☐ 950 Constitutionality of |
| | Other | | ☐ 465 Other Immigration | | State Statutes |
| | ☐ 440 Other Civil Rights | | Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from another district (specify)

☐ 6 Multidistrict Litigation

☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
Real Estate and Settlement Procedures Act, 12 U.S.C. § 2601 et seq. (Complete list attached)

Brief description of cause:
Defendants fraudulently induced plaintiffs to contract causing financial damage.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ 10,000,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):

JUDGE _____    DOCKET NUMBER _____

DATE  August 8, 2008

SIGNATURE OF ATTORNEY OF RECORD   Michael G. Alfred

**FOR OFFICE USE ONLY**

RECEIPT # 153851    AMOUNT $350    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

JAC  8/8/08

**UNITED STATES
DISTRICT COURT**
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

**# 153851    — TC**

**August 08, 2008
16:04:07**

**Civ Fil Non-Pris**
USAO #.: 08-1451
Judge..: NAPOLEON A JONES, JR
Amount.:                $350.00 CK
Check#.: BC1649

**Total—> $350.00**

FROM: RYAN ARCHER
      VS
      WALLACE DARLING